**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| STOPLOSS SPECIALISTS, LLC, | ) | Case No. 4:26-ap-03072 |
| STOPLOSS, LLC, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| INSURED ADVOCACY GROUP, LLC, | ) | |
| INSURED ADVOCACY GROUP II, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

---

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

**TABLE OF CONTENTS**

I.      INTRODUCTION ...................................................................................................1

II.     RELEVANT ALLEGATIONS...............................................................................2

III.    LEGAL STANDARD............................................................................................3

IV.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A PLAUSIBLE
        BREACH-OF-CONTRACT CLAIM ....................................................................4

        A.      Defendants do not challenge the plausibility of Plaintiffs' allegations. ..................6

        B.      Defendants' improper fact disputes are not a valid basis for dismissal. ..................8

V.      PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A PLAUSIBLE
        TORTIOUS-INTERFERENCE CLAIM ...............................................................10

VI.     DISMISSAL WITH PREJUDICE IS UNWARRANTED WITHOUT AN
        OPPORTUNITY TO AMEND...............................................................................12

VII.    CONCLUSION.......................................................................................................13

## TABLE OF AUTHORITIES

**Cases**                                                                                                        **Page(s)**

*Access Telecom, Inc. v. MCI Telecomm. Corp.*,
    197 F.3d 694 (5th Cir. 1999) ...................................................................................11, 12

*Adhikari v. Daoud & Partners*,
    Case No. 09–cv–1237, 2011 WL 13261998 (S.D. Tex. Dec. 12, 2011) ..............................6, 8

*AHBP LLC v. Lynd Co.*,
    649 F. Supp.3d 371 (W.D. Tex. Jan. 9, 2023) .....................................................................5, 9

*Causey v. Sewell Cadillac-Chevrolet, Inc.*,
    394 F.3d 285 (5th Cir. 2004) ..................................................................................................9

*Cleveland Const., Inc. v. Centex Const. Co., Inc.*,
    Case No. 03-cv-1437, 2004 WL 594093 (N.D. Tex. Mar. 24, 2004).......................................7

*Crest Ridge Const. Grp., Inc. v. Newcourt Inc.*,
    78 F.3d 146 (5th Cir. 1996) ...............................................................................................6, 8

*Cuba v. Pylant*,
    814 F.3d 701 (5th Cir. 2016) ................................................................................................10

*Diabetes Ctrs. of Am., Inc., v. Healthpia Am., Inc.*,
    Case No. 06-cv-3457, 2007 WL 1256570 (S.D. Tex. Apr. 30, 2007)...................................4, 9

*Don Stevenson Design, Inc. v. TBP Enters. I, Ltd.*,
    Case No. 16–cv–01128, 2018 WL 1902688 (W.D. Tex. Apr. 19, 2018) ............................4, 10

*Foreca, S.A. v. GRD Dev. Co., Inc.*,
    758 S.W.2d 744 (Tex. 1988)................................................................................................6, 8

*Goyen v. Prop. & Cas. Ins. Co. of Hartford*,
    Case No. 24-cv-03024, 2025 WL 2592526 (N.D. Tex. Sept. 6, 2025) ....................................7

*Hart v. Bayer Corp.*,
    199 F.3d 239 (5th Cir. 2000) ..............................................................................................4, 12

*In re Katrina Canal Breaches Litig.*,
    495 F.3d 191 (5th Cir. 2007) ..................................................................................................9

*Innova Hosp. S.A., Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*,
    892 F.3d 719 (5th Cir. 2018) ..........................................................................................3, 6, 7

*LCP RCP, LLC v. Ally Bank*,
    Case No. 19-cv-00396, 2019 WL 13095364 (N.D. Tex. July 31, 2019)..................................8

*League of United Latin Am. Citizens v. Abbott*,
Case No. 21-cv-00259, 2022 WL 4545757 (W.D. Tex. Sept. 28, 2022)................................12

*League v. HSBC Bank USA*,
Case No. 4:20-cv-352, 2021 WL 1131230 (E.D. Tex. Feb. 24, 2021).......................................7

*M-I, LLC v. Enventives, LLC*,
Case No. 4:17-cv-3275, 2018 WL 2376503, (S.D. Tex. Apr. 26, 2018), *report
and recommendation adopted*, 2018 WL 2371038 (S.D. Tex. May 24, 2018) .....................4, 9

*Perrin v. Smith*,
Case No. 13-cv-389, 2013 WL 12190190 (S.D. Tex. Apr. 9, 2013).........................................7

*Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*,
625 S.W.2d 295 (Tex. 1981)....................................................................................................8

*Scanlan v. Tex. A&M Univ.*,
343 F.3d 533 (5th Cir. 2003) .............................................................................................3, 4

*Stamps v. Univ. of Tex. at Aus.*,
Case No. 20-cv-01204, 2022 WL 526169 (W.D. Tex. Apr. 19, 2018) ...............................4, 10

*Sting Soccer Operations Grp. LP v. JP Morgan Chase Bank, N.A.*,
Case No. 15-cv-127, 2016 WL 3917640 (E.D. Tex. July 20, 2016) .......................................12

*Terex Corp. v. Cubex Ltd.*,
Case No. 06-cv-1639, 2006 WL 3542706 (N.D. Tex. Dec. 7, 2006) .......................................8

*Westcott Holdings, Inc. v. Monitor Liab. Managers, Inc.*,
Case No. 05-cv-1945, 2005 WL 2206196 (S.D. Tex. Sept. 12, 2005) ...................................10

**Rules**

Fed. R. Civ. P. 12(b)(6)................................................................................................ *passim*

## I.      INTRODUCTION

StopLoss Specialists, LLC ("Specialists") and StopLoss, LLC ("StopLoss," and together with Specialists, "Plaintiffs") provide emergency response and property restoration services primarily to commercial buildings. Pursuant to an August 16, 2023 agreement (the "Agreement") and a December 13, 2024 addendum to that agreement (the "Addendum"), Insured Advocacy Group, LLC and Insured Advocacy Group II, LLC (together, "Defendants") agreed in writing to help finance Plaintiffs' restoration work on the historic Renaissance Tower in downtown Dallas, Texas. But Defendants never provided the financing they promised. And Plaintiffs' reliance on their false promises caused Plaintiffs millions of dollars in damages and ultimately forced Plaintiffs to file for bankruptcy protection before this Court. Plaintiffs have sued Defendants for breach of contract and for tortious interference with Plaintiffs' attempt to secure alternative financing.

Defendants now ask the Court to dismiss—*with prejudice*—Plaintiffs' entire case under Federal Rule of Civil Procedure 12(b)(6). Rule 12(b)(6), of course, allows defendants to challenge the legal sufficiency of a plaintiff's claims. Defendants do not do that. In their motion, Defendants appear to agree with many of Plaintiffs' allegations. *See, e.g.*, Dkt. 7 ("Mot.") at 3 (Defendants do not dispute the existence or validity of the Agreement); *id*. at 2 (Defendants recognize that Plaintiffs allege the Agreement and Addendum form a contract for the Renaissance Tower project). And they do not say that those allegations are insufficient to state a claim. Instead, they add their own allegations, arguing that the Addendum was not binding because Defendants created certain conditions precedent to the Addendum that Plaintiffs did not perform. *Id.* at 4–5. Not only is that position incorrect, it is also based entirely on outside-the-pleadings documents. The Court should not consider these documents, nor should it engage improperly in the fact disputes Defendants' motion raises. Indeed, Defendants' factual argument only confirms that it has no challenge to the *legal* sufficiency of Plaintiffs' complaint. The Court should deny the motion.

1

## II.     RELEVANT ALLEGATIONS

In the property restoration business, it is common for companies like Plaintiffs to enter into "factoring" arrangements with financing companies that provide funding for specific projects. Under a factoring arrangement, one company (here, Specialists) agrees to sell certain of its accounts receivable at a discount to another company (here, Defendants) in exchange for an advanced, upfront payment. The seller receives an immediate capital injection—typically, a percentage of the total expected value of the account—that permits the seller to begin or continue the capital-intensive work required to restore a building. In exchange, the buyer is repaid its initial funding, plus a premium, through the purchased accounts over a longer period.

The complaint alleges that Specialists and Defendants entered a "First Party Claims Non-Recourse Sale and Assignment Agreement" (the "Agreement"), dated August 16, 2023, pursuant to which Defendants agreed to finance certain of Plaintiffs' restoration projects. Dkt. 1 at ¶¶ 2, 27. The complaint also alleges that, after August 16, 2023, Defendants purchased several accounts from Specialists by agreeing to various purchase addenda applicable to each specific account or project. *Id*. at ¶ 30.

In mid-2024, Defendants introduced Plaintiffs to a potential restoration project for the Renaissance Tower, a high-rise in downtown Dallas, Texas, which had sustained significant damage during a storm earlier that year (the "Renaissance Project"). Defendants: (1) encouraged Plaintiffs to procure a work contract for the Renaissance Project; and (2) committed to financing the Renaissance Project if Plaintiffs could secure said contract. *Id*. at ¶ 6. Relying on Defendants' representations, Plaintiffs secured a Work Agreement with GrayStreet Management Services, LLC (Renaissance Tower's management company) to restore the building. *Id*. at ¶ 7. Both in the lead-up and aftermath of the GrayStreet Work Agreement, Defendants made repeated representations to Plaintiffs that they intended to fund the Renaissance Project. *Id*. at ¶ 42.

2

In the Addendum, dated December 13, 2024, Defendants agreed in writing to finance the Renaissance Project. *Id*. at ¶ 43. The Addendum memorialized the purchase price of invoices for just the initial mitigation and restoration work at over $5 million, with the possibility of over $400 million in proceeds over the project's lifespan. *Id*. at ¶ 44. Despite their written commitments, Defendants never paid Plaintiffs any amount toward the Renaissance Project. *Id*. at ¶ 46. Worse, after Plaintiffs attempted to secure alternative financing to continue work on the Renaissance Project—proceeding as far as a signed term sheet with another party—Defendants interfered with Plaintiffs' relationship with the alternative funder. *Id*. at ¶ 50. For example, Defendants told both Plaintiffs and the alternative funder that Defendants intended to restart its funding of the Renaissance Project, but that funding never came. *Id*.

Defendants' actions left Plaintiffs unable to secure any alternate financing, resulted in GrayStreet's termination of the Work Agreement, and ultimately forced Plaintiffs into bankruptcy. *Id*. at ¶¶ 52–56.

## III.    LEGAL STANDARD

A court evaluating a motion to dismiss under Rule 12(b)(6) "must accept all well-pleaded facts as true, viewing those facts most favorably to the plaintiff." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003). "To survive a motion to dismiss, a complaint must contain sufficient factual matter which, when taken as true, states 'a claim to relief that is plausible on its face.'" *Innova Hosp. S.A., Ltd. P'ship v. Blue Cross & Blue Shield of Ga., Inc.*, 892 F.3d 719, 726 (5th Cir. 2018) (citation omitted).

When ruling on a motion to dismiss, "the district court must not go outside the pleadings." *Scanlan*, 343 F.3d at 536. The only recognized exception to this bright-line rule is if documents attached to a motion to dismiss are also "referred to in the plaintiff's complaint and are central to the plaintiff's claim." *Id*. The exception is rarely invoked because "attachments to the defendants'

3

motion to dismiss are just that—evidence for the defense." *Don Stevenson Design, Inc. v. TBP Enters. I, Ltd.*, Case No. 16–cv–01128, 2018 WL 1902688, at *2 (W.D. Tex. Apr. 19, 2018). "Moreover, a defendant's 'version of the facts contradicting the complaint's allegations' is not the type of document considered central to a plaintiff's claim." *Stamps v. Univ. of Tex. at Aus.*, Case No. 20-cv-01204, 2022 WL 526169, at *5 (W.D. Tex. Apr. 19, 2018), *report and recommendation adopted* at Dkt. 50 (W.D. Tex. Mar. 21, 2022) (citation omitted). And in a breach-of-contract dispute, courts consider documents attached to a 12(b)(6) motion "only when *no dispute exists* as to whether the attached contract is in fact *the same contract that is referenced in the complaint and central to the plaintiff's claims*." *M-I, LLC v. Enventives, LLC*, Case No. 4:17-cv-3275, 2018 WL 2376503, at *3 (S.D. Tex. Apr. 26, 2018), *report and recommendation adopted*, 2018 WL 2371038 (S.D. Tex. May 24, 2018) (first emphasis added and second emphasis in original).

Ultimately, dismissal under Rule 12(b)(6) is "consistently disfavored." *Scanlan*, 343 F.3d at 536; *see also Diabetes Ctrs. of Am., Inc., v. Healthpia Am., Inc.*, Case No. 06-cv-3457, 2007 WL 1256570, at *1 (S.D. Tex. Apr. 30, 2007) ("A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is viewed with disfavor and is rarely granted."). Dismissal with prejudice is even rarer and should not be granted unless a complaint's "defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart v. Bayer Corp.*, 199 F.3d 239, 248 n.6 (5th Cir. 2000).

### IV.   PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A PLAUSIBLE BREACH-OF-CONTRACT CLAIM

In Texas,[1] a claim for breach of contract requires "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant;

---

[1] The Agreement contains a Texas choice-of-law provision. Dkt. 6-1 at § 9.1.1. Defendants' motion appears to accept that Texas law applies to this dispute.

and (4) damages sustained by the plaintiff as a result of the breach." *AHBP LLC v. Lynd Co.*, 649 F. Supp.3d 371, 399 (W.D. Tex. Jan. 9, 2023) (citation omitted). The complaint alleges facts supporting each element. *See* Dkt. 1 at ¶¶ 27, 42–44 (existence of a contract); 45–51 (Plaintiffs' performance and Defendants' breach); 46–56 (damages sustained). Plaintiffs have also filed the relevant contract. Dkt. 6-1, 6-2.[2]

Defendants acknowledge Plaintiffs' allegation that the contract Plaintiffs filed with the Court is the relevant agreement. *See* Mot. at 2 (acknowledging Plaintiffs' allegation that only the Agreement and Addendum form the "financing agreement between Plaintiffs and Defendants" for the Renaissance Project). But they dispute that allegation. Specifically, Defendants move to dismiss Plaintiffs' breach-of-contract claim by challenging only the first element—the existence of a contract. While Defendants agree that the parties entered into the August 2023 Agreement, Defendants claim that they did not agree to the December 2024 Addendum because Defendants created certain conditions precedent to the Addendum over email. *Id*. at 4. This is despite the fact that the Addendum (1) was sent to Plaintiffs, (2) was signed by a representative for Defendants, and (3) referenced no agreement other than the original base Agreement. *See* Dkt. 6-2. These over-email conditions supposedly included Plaintiffs' execution of: (a) a Contractor Reimbursement Agreement ("CRA"); (b) an Application Agreement; and (c) personal guarantees by StopLoss's principals at the time. Mot. at 2.

---

[2] The complaint makes clear that Plaintiffs intended to attach the Agreement and Addendum as Exhibits 1 and 2, respectively. Plaintiffs inadvertently omitted these attachments when first filing this adversary proceeding. After Defendants' counsel raised this with Plaintiffs' counsel, Plaintiffs promptly contacted the Clerk's office for guidance and were instructed to submit the referenced exhibits as a separate filing, which is what Plaintiffs did. *See* Dkt. 6. Plaintiffs also promptly served the exhibits on Defendants. As Defendants' motion makes clear, they are on notice of Plaintiffs' allegations with respect to these documents. Defendants do not dispute that they are on notice. Indeed, prior to initiating this adversary proceeding, Plaintiffs filed a nearly identical lawsuit in the Southern District of New York, attaching the Agreement and Addendum as exhibits.

Whether the execution of these documents was a condition precedent to the Addendum is a fact dispute that cannot be determined at this time. *See, e.g.*, *Foreca, S.A. v. GRD Dev. Co., Inc.*, 758 S.W.2d 744, 746 (Tex. 1988) (determining whether language in a document was a condition precedent to contract formation was a question for the jury because "[t]he evidence as to the intent of the parties is disputed"); *Crest Ridge Const. Grp., Inc. v. Newcourt Inc.*, 78 F.3d 146, 151 (5th Cir. 1996) (applying *Foreca* and holding that "[w]hether the parties intended to form a contract is a question for the jury"); *cf. Adhikari v. Daoud & Partners*, Case No. 09–cv–1237, 2011 WL 13261998, at *14 (S.D. Tex. Dec. 12, 2011) (holding, in a case where the defendant had argued a different set of documents constituted the disputed contract, that "[t]he question of which contract applies is a factual issue which is inappropriate for resolution in this motion to dismiss"). Nor should the Court consider at all the unauthenticated documents that Defendants submitted along with their motion, which are not referenced anywhere in Plaintiffs' complaint, the Agreement, or the Addendum. The Court should deny the motion to dismiss.

### A.      Defendants do not challenge the plausibility of Plaintiffs' allegations.

On a motion to dismiss, all plausible facts a plaintiff alleges are accepted as true. Dismissal is warranted only if the facts, as alleged, would not entitle Plaintiffs to relief. *See, e.g.*, *Innova*, 892 F.3d at 726. Defendants make no such argument. Nor could they.

In the complaint, Plaintiffs described with particularity the existence of a valid contract, including: (1) how "Specialists and Defendants are parties to a First Party Claims Non-Recourse Sale and Assignment Agreement (the 'Agreement'), dated August 16, 2023," Dkt. 1 at ¶ 2; (2) how "Defendants prepared a purchase addendum," dated December 13, 2024, that "memorialized the Purchase Price" of the first tranche of invoices Defendants agreed to purchase for the Renaissance Project, *id*. at ¶¶ 42; (3) and how "[t]he Agreement and Addendum are binding and enforceable contracts between Specialists and Defendants" and how "[t]he terms of the Agreement and

6

Addendum are sufficiently certain for the Court to enforce," *id*. at ¶ 58. The agreements Plaintiffs filed with the complaint show Defendants' signature on all relevant documents, and Defendants do not dispute their execution of these documents. *See* Dkt. 6-1, 6-2. Defendants even concede that they are on notice of Plaintiffs' allegations regarding which documents form the parties' contract. *See* Mot. at 2 ("According to the Complaint, the alleged financing agreement between Plaintiffs and Defendants consists of [the Agreement], identified as Exhibit 1 to the Complaint, together with an alleged Purchase Addendum to the August 2023 Agreement, dated December 13, 2024, which is identified as Exhibit 2 to the Complaint . . . .").

Plaintiffs' allegations are more than sufficient to plead the existence of a valid contract. *See, e.g.*, *Innova*, 892 F.3d at 732 (breach-of-contract claim properly pled even when specific terms of the contract were not described); *Goyen v. Prop. & Cas. Ins. Co. of Hartford*, Case No. 24-cv-03024, 2025 WL 2592526, at *2 (N.D. Tex. Sept. 6, 2025) (plaintiffs' allegation that they were the "owner of a Texas Homeowner Insurance Policy" was sufficient to plead the existence of a contract); *League v. HSBC Bank USA*, Case No. 4:20-cv-352, 2021 WL 1131230, at *3 (E.D. Tex. Feb. 24, 2021) (plaintiff sufficiently pled the existence of a contract by identifying the contract, when it was made, and signatories to the contract); *Perrin v. Smith*, Case No. 13-cv-389, 2013 WL 12190190, at *2 (S.D. Tex. Apr. 9, 2013) (plaintiff alleged all elements of a breach-of-contract claim even if he did not attach the contract to the complaint).

That Defendants fail to raise a single *legal* argument questioning the sufficiency of Plaintiffs' allegations is fatal to their motion. *See, e.g.*, *Cleveland Const., Inc. v. Centex Const. Co., Inc.*, Case No. 03-cv-1437, 2004 WL 594093, at *1 (N.D. Tex. Mar. 24, 2004) (denying motion to dismiss because defendant's "arguments do not address the legal sufficiency of the breach of contract claim"). The Court can deny Defendants' motion on this basis alone.

7

**B.      Defendants' improper fact disputes are not a valid basis for dismissal.**

Defendants' sole basis for dismissal is to raise premature fact disputes that cannot be resolved on a motion to dismiss. Defendants assert the existence of numerous, supposedly undisputed "facts" that, when viewed in *Defendants'* favor, suggest the absence of an agreement. These assertions include that: (1) Plaintiffs agreed that "all future transactions between the parties" would be governed by new documents, including a CRA, Application Agreement, and Personal Guarantees by StopLoss's principals, Mot. at 3; (2) Defendants' agreement to finance the Renaissance Project was "expressly conditioned upon Plaintiffs executing" the aforementioned documents, *id*. at 4; and (3) "Defendants lawfully terminated their existing business relationship with Plaintiffs" before Plaintiffs accepted the Addendum, *id*.

Defendants do nothing more than raise potential fact issues about contract formation, which the Court cannot consider at this stage. "The question of whether an agreement was reached by the parties is generally a question of fact where the existence of the agreement is disputed." *Preston Farm & Ranch Supply, Inc. v. Bio-Zyme Enters.*, 625 S.W.2d 295, 298 (Tex. 1981); *see also Foreca*, 758 S.W.2d at 746; *Crest Ridge Const. Grp.*, 78 F.3d at 151. Through their motion, Defendants dispute whether an agreement was reached. But a "[c]ourt cannot resolve factual disputes on a motion to dismiss." *LCP RCP, LLC v. Ally Bank*, Case No. 19-cv-00396, 2019 WL 13095364, at *3 (N.D. Tex. July 31, 2019); *see also Adhikari*, 2011 WL 13261998, at *14 (denying motion to dismiss because the defendant's motion merely disputed plaintiff's allegations by submitting a set of documents that the defendant claimed was the operative contract but which was clearly a "factual issue which is inappropriate for resolution in this motion to dismiss"); *Terex Corp. v. Cubex Ltd.*, Case No. 06-cv-1639, 2006 WL 3542706, at *13 (N.D. Tex. Dec. 7, 2006) ("Because the challenge to the breach of contract claims require the court to engage in factual determinations and because such determinations are inappropriate on a Rule 12(b)(6) motion to

8

dismiss, the court denies [defendant's] motion to dismiss the breach of contract claim."). Again, the Court does not need to go any further to deny the motion.

Defendants may argue on reply that the Court should nonetheless consider the various documents Defendants attached to their motion as evidence of the parties' "entire" agreement. Mot. at 2. But "[c]onsidering a contract attached by the defendant to its motion to dismiss to be part of the pleadings makes sense only when no dispute exists as to whether the attached contract is in fact *the same contract that is referenced in the complaint and central to the plaintiff's claims*." *M-I, LLC*, 2018 WL 2376503, at *3 (emphasis in original). "Absent consensus" that a document "is in fact the particular contract that forms the basis of [a] suit, [a] court cannot consider it part of the pleadings." *Id*. at *4; *see also Diabetes Ctr. of Am.*, 2007 WL 1256570, at *2 (noting that "[t]he proper construction of and interrelationship among" three alleged contracts "is not the proper focus of a motion to dismiss"). Defendants offer no justification for why the Court should consider their proffered emails and documents. There is none. There is no consensus that they constitute any part of the contract referenced in Plaintiffs' complaint. Nor are they even authenticated.

Defendants' own cases support Plaintiffs' position. In *AHBP*, which Defendants cite on page 3 of their motion, the court "decline[d] to consider the exhibit submitted by the [defendants]" because the document was "not authenticated by any person with knowledge." 649 F. Supp. 3d at 401. The court further reaffirmed that consideration of outside-the-pleadings documents attached to a motion to dismiss is appropriate only where, unlike here, "there is *no dispute* that the [defendant's] attached contract *is in fact the same contract that is referenced in the complaint* and central to plaintiff's claims." *AHBP*, 649 F. Supp. 3d at 401 (emphasis added). And in Defendants' other two cases, cited on page 3 of their motion, *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007), and *Causey v. Sewell Cadillac–Chevrolet, Inc.*, 394 F.3d 285, 288

(5th Cir. 2004), there appears to have been *no dispute* that the documents the defendants submitted in conjunction with their motions to dismiss were the relevant documents.

Plaintiffs' complaint here does not mention any emails between the parties, a CRA, an Application Agreement, or any personal guarantees. Instead, attaching these emails and documents to their motion is simply Defendants' way of telling their "version of the facts contradicting the complaint's allegations," which is not a valid reason for the Court to consider them. *Stamps*, 2022 WL 526169, at *5 (citation omitted); *see also Don Stevenson Design*, 2018 WL 1902688, at *2 (refusing to consider a letter submitted in support of a motion to dismiss, and denying the motion, because the letter was not central to any claim in plaintiff's complaint and merely supported one of defendant's affirmative defenses); *Westcott Holdings, Inc. v. Monitor Liab. Managers, Inc.*, Case No. 05-cv-1945, 2005 WL 2206196, at *5 (S.D. Tex. Sept. 12, 2005) (refusing to consider a document attached to a motion to dismiss because "[i]t is a document asserting defendants' position" and "advances factual assertions" simply supporting defendants' view of the dispute).

If the Court examines any document at all, it should note how the Addendum states that it is "a supplement to and an amendment of *the First Party Claims Sale and Assignment Agreement by and between Insured Advocacy Group II, LLC ('Buyer') and Stoploss Specialists LLC ('Seller'), dated as of August 16, 2023*" (the Agreement). Dkt. 6-2. No other agreement is referenced in the Addendum. And the Court need not and should not consider any other document.

## V.     PLAINTIFFS HAVE SUFFICIENTLY ALLEGED A PLAUSIBLE TORTIOUS-INTERFERENCE CLAIM

In Texas, "[t]he elements of tortious interference with contract are (1) a contract subject to interference; (2) a willful and intentional act of interference (3) that was a proximate cause of the plaintiff's damages; and (4) actual damage." *Cuba v. Pylant*, 814 F.3d 701, 717 (5th Cir. 2016). The complaint sufficiently alleges each element of a tortious-interference claim. *See* Dkt. 1 at

10

¶¶ 37–39, 65 (Defendants' knowledge of the GrayStreet Work Agreement); ¶¶ 47–52, 66 (Defendants' interference); ¶¶ 53–56, 67 (causation and actual damages).

Like with the breach-of-contract claim, Defendants do not challenge the sufficiency of Plaintiffs' pleading of this claim. Instead, they argue only that the tortious-interference claim "is premised entirely on Defendants' breach of a financing agreement between Defendants and Plaintiffs which simply did not exist." Mot. at 5. Defendants cite no support for this position—and are wrong. Plaintiffs' tortious-interference claim is *not* "premised entirely on Defendants' breach of a financing agreement between Plaintiffs and Defendants." *Id.* It is a separate, standalone claim based on Defendants' interference with the GrayStreet Work Agreement by not funding the project *and* preventing Plaintiffs from securing alternate financing. The claim does not require there to have been any underlying contract between Plaintiffs and Defendants. *See, e.g.*, *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 712 (5th Cir. 1999) (tortious-interference claim was independent from a breach-of-contract claim because the plaintiff alleged defendant "breached duties imposed affirmatively outside the context of the [underlying] contracts").

Specifically, Plaintiffs allege that Defendants interfered by, *inter alia*, taking "actions to prevent Plaintiffs from securing [an] alternative financing" arrangement with a third party. Dkt. 1 at ¶ 50. After Defendants failed to finance the Renaissance Project, Plaintiffs "notified Defendants that they were attempting to secure financing from another party to save the project." *Id.* at ¶ 49. Specialists progressed as far as an executed term sheet with a potential alternate funder, but Defendants prevented Plaintiffs from securing that financing by obstructing that relationship, including by telling the alternate funder that Defendants intended to provide the financing for the Renaissance Project. *Id.* at ¶ 50. Defendants' separate tortious interference with Plaintiffs' attempt to secure alternate financing and contract with GrayStreet damaged Plaintiffs. *Id.* at ¶¶ 53–55.

11

Plaintiffs' tortious-interference claim does not rise and fall with their breach-of-contract claim against Defendants. And Defendants cite no support for their position that it does. Mot. at 5. Because the claim involves Defendants' interference in more than one way with Plaintiffs' separate relationship with GrayStreet, it stands on its own. *See, e.g.*, *Access Telecom*, 197 F.3d at 712; *Sting Soccer Operations Grp. LP v. JP Morgan Chase Bank, N.A.*, Case No. 15-cv-127, 2016 WL 3917640, at *8 (E.D. Tex. July 20, 2016) (tortious-interference claim was separate from breach-of-contract claim because it "alleges an independent duty breached separately from [defendant's] contractual undertaking"). The Court should deny Defendants' request to dismiss the claim.

## VI.      DISMISSAL WITH PREJUDICE IS UNWARRANTED WITHOUT AN OPPORTUNITY TO AMEND

Defendants request the drastic relief of dismissing Plaintiffs' entire case with prejudice. Mot. at 5. "Ordinarily, when granting a Rule 12(b)(6) motion, courts freely grant plaintiffs leave to amend the complaint instead of dismissing the case entirely." *League of United Latin Am. Citizens v. Abbott*, Case No. 21-cv-00259, 2022 WL 4545757, at *32 (W.D. Tex. Sept. 28, 2022). The Court should deny Defendants' motion. If the Court grants any portion of Defendants' motion, however, Plaintiffs respectfully request and should be permitted leave to amend because dismissal with prejudice is improper "unless the defect is simply incurable or the plaintiff has failed to plead with particularity after being afforded repeated opportunities to do so." *Hart*, 199 F.3d at 248 n.6.

Defendants' motion does not even attempt to explain why dismissal with prejudice is warranted here. It is not. Defendants have not challenged the sufficiency of Plaintiffs' allegations, choosing instead to present an alternate set of disputed facts. Plaintiffs have also not been afforded "repeated opportunities" to amend to address any deficiencies with their complaint. *Id*. If the Court grants any portion of Defendants' motion, it should permit Plaintiffs leave to cure any potential defect identified by the Court.

## VII.   CONCLUSION

Defendants' motion to dismiss does not challenge the legal sufficiency of Plaintiffs' allegations and, indeed, appears to agree with many of them. Instead, Defendants' motion simply tries to tell Defendants' version of events, which version raises various disputed facts. In support, Defendants submit unauthenticated emails and documents that the Court should not consider. Ultimately, none of these issues can or should be addressed on a motion to dismiss. They only confirm the need for this case to proceed to discovery. The Court should deny the motion.

Dated:  April 28, 2026

Respectfully,

*/s/ Krisina Zuñiga*

Vineet Bhatia
S.D. Admissions No. 20187
Krisina Zuñiga
S.D. Admissions No. 2942573
Susman Godfrey L.L.P.
1000 Louisiana, Suite 5100
Houston, Texas 77002-5096
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
vbhatia@susmangodfrey.com
kzuniga@susmangodfrey.com

Lear Jiang (*pro hac vice forthcoming*)
Susman Godfrey L.L.P.
1900 Avenue of the Stars, Suite 1400
Los Angeles, California 90067
Telephone: (310) 789-3100
Facsimile: (310) 789-3150
ljiang@susmangodfrey.com

*Counsel for Plaintiffs*

14

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that I caused a true and correct copy of the foregoing to be served on this 28th day of April, 2026 by electronic mail via the Court's ECF system to all parties authorized to receive electronic notices.

*/s/ Krisina Zuñiga*
Krisina Zuñiga
