United States Bankruptcy Court
Southern District of Texas

**ENTERED**

June 15, 2026

Nathan Ochsner, Clerk

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | **CASE NO: 26-90386** |
| TM36, LLC, *et al.*, | § | |
| | § | **CHAPTER 11** |
| Debtors. | § | |
| | § | |
| STOPLOSS SPECIALISTS, | § | |
| LLC, *et al.*, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| VS. | § | **ADVERSARY NO. 26-3072** |
| | § | |
| INSURED ADVOCACY GROUP, | § | |
| LLC, *et al.*, | § | |
| | § | |
| Defendants. | | |

## ORDER ON DEFENDANTS' MOTION TO DISMISS (ECF NO. 7)

Defendants, Insured Advocacy Group, LLC ("IAG I") and Insured Advocacy Group II, LLC ("IAG II," and collectively "IAG") move to dismiss the adversary complaint filed by Plaintiffs, StopLoss Specialists, LLC ("Specialists") and StopLoss, LLC (collectively, "StopLoss").[1] IAG moves to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure[2] for failure to state a claim upon which relief can be granted.[3] For the reasons explained below, IAG's motion to dismiss is denied.

---

[1] ECF No. 7.

[2] Rule 12(b)(6) of the Federal Rules of Civil Procedure is made applicable in these proceedings by Bankruptcy Rule 7012. *See* FED. R. BANKR. P. 7012(b).

[3] ECF No. 1.

## BACKGROUND

StopLoss is engaged in the business of emergency response and property restoration services.[4]  StopLoss, LLC was created in 2023 as a joint venture between Specialists and Command 247, LLC.[5]  StopLoss, LLC acts as a holding company for other debtors who are not implicated in this adversary proceeding, and Specialists serves as the party which enters into contracts on behalf of StopLoss, LLC.[6]

In August 2023, Specialists and IAG I entered into a contract titled the "First Party Claims Non-Recourse Sale and Assignment Agreement" (the "Factoring Agreement").[7]  The contract is a type of factoring agreement wherein Specialists agreed to sell certain accounts receivable it expected to receive in the future to IAG at a discount in exchange for immediate cash.  IAG does not dispute that it entered into the Factoring Agreement.[8]

StopLoss alleges that after entering into the Factoring Agreement, IAG had a practice of identifying potential restoration projects for Stoploss and encouraging them to procure contracts for those projects.[9]  And StopLoss contends that it relied on IAG's factoring commitments when it attempted to procure new projects.[10]  StopLoss also alleges that since August 2023, IAG had purchased accounts from Specialists under the Factoring Agreement by executing various purchase addenda, with each addendum specifying the amount that IAG agreed to purchase and Specialists agreed to sell.[11]

In October 2024, Specialists entered into a restoration contract with GrayStreet Management Services, LLC ("GrayStreet") to remediate damage to the Renaissance Tower, a fifty-six-story

---

[4] Case No. 26-90386, ECF No. 152, at 1.
[5] Case No. 26-90386, ECF No. 152, at 1.
[6] Case No. 26-90386, ECF No. 10 ¶¶ 14−18.
[7] ECF No. 6-1.
[8] ECF No. 7, at 3.
[9] ECF No. 1, ¶ 31.
[10] ECF No. 1, ¶ 31.
[11] ECF No. 1 ¶ 30.

skyscraper in Dallas, Texas.[12]  StopLoss alleges that IAG introduced it to the Renaissance Tower project, encouraged it to procure this restoration contract, and committed to financing the project if StopLoss could secure the contract.[13]

StopLoss anticipated that it would incur around $400 million in expenses to complete the Renaissance Tower project.[14]  To finance their work on the project, Specialists sought to obtain funds from IAG by selling accounts receivable from the Renaissance Tower project under the Factoring Agreement.[15]  StopLoss alleges that in December 2024, it and IAG executed a purchase addendum wherein IAG agreed to purchase over $5 million of Specialists' accounts receivable from the Renaissance Tower project.[16]  It also alleges that in reliance on IAG's commitment to purchase over $5 million of its accounts receivable, it spent millions of dollars on the Renaissance Tower project.[17]  IAG never made any payments to StopLoss related to the Renaissance Tower project.[18] And IAG does not dispute that no payments were ever made.[19]

StopLoss contends that IAG's non-payment forced it to stop all work on the Renaissance Tower while it sought alternative financing.[20] After StopLoss and an alternative financier executed a term sheet, StopLoss alleges that IAG communicated to both it and the alternative financier that IAG intended to fund the project so that work could resume on the Renaissance Tower project, which caused the alternative financier to cease negotiations with StopLoss.[21]  However, even after

---

[12] ECF No. 1 ¶¶ 35−38.
[13] ECF No. 1 ¶ 6.
[14] ECF No. 1 ¶ 40.
[15] ECF No. 1 ¶¶ 37
[16] ECF No. 6-2.
[17] ECF No. 1. ¶ 45.
[18] ECF No. 1 ¶ 46.
[19] *See*  ECF No. 7.
[20] ECF No. 1 ¶ 47−48.
[21] ECF No. 1. ¶ 49−51.

these alleged discussions, StopLoss did not receive any funds from IAG.[22]

Because StopLoss was unable to procure funding and resume work on the Renaissance Tower project, GrayStreet terminated its contract with StopLoss[23]   StopLoss alleges that the termination agreement specifically identifies IAG's failure to fund the project as a basis for termination.[24]   StopLoss contends that IAG's failure to pay caused it to lose its anticipated profits from the Renaissance Tower project, caused it to lose other projects, and significantly contributed to its eventual bankruptcy.[25]

On January 20, 2026, certain petitioning creditors commenced an involuntary Chapter 11 case against StopLoss, LLC in the United States Bankruptcy Court for the Western District of Louisiana.[26]  On March 5, 2026, the debtors commenced their voluntary Chapter 11 proceedings in this district, which are assigned to the undersigned judge and are being jointly administered under Case No. 25-90386.[27] And on March 12, 2026, the Honorable John W. Kolwe transferred the involuntary case from the Louisiana Bankruptcy Court to this district.[28]

On March 12, 2026, StopLoss commenced this adversary proceeding.[29]   StopLoss's adversary complaint contains two causes of action under Texas law: (i) breach of contract; and (ii) tortious interference with contract.[30]   This same dispute was previously the subject of litigation in the United States District Court for the Southern District of New York.[31]   That case was commenced in August 2025 and

---

[22] ECF No. 1 ¶ 51.
[23] ECF No. 1 ¶ 53.
[24] ECF No. 1 ¶ 53.
[25] ECF No. 1 ¶ 55.
[26] Bankr. W.D. La. Case No. 26-50049, ECF No. 1.
[27] Case No. 26-90386, ECF No. 1.
[28] Bankr. W.D. La. Case No. 26-50049, ECF No. 12.
[29] ECF No. 1.
[30] ECF No. 1 ¶¶ 57–67.
[31] S.D.N.Y. Case No. 1:25-cv-06339, ECF No. 1.

proceeded until March 12, 2026, when StopLoss voluntarily dismissed its case.[32]

On April 7, 2026, IAG moved to dismiss this adversary proceeding under Rule 12(b)(6).[33]  On June 11, 2026, the Court held a hearing on IAG's motion to dismiss, heard argument, and took the matter under advisement.[34]

## JURISDICTION & VENUE

28 U.S.C. § 1334(a) provides the District Courts with jurisdiction over this proceeding.  Under 28 U.S.C. § 157(a), "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district."  This proceeding has been referred to this Court under General Order 2012-6 (May 24, 2012).  This is a non-core proceeding that is related to a case under title 11.  28 U.S.C. § 157(c).  The parties' express and implied consent provides this Court constitutional authority to enter a final judgment.[35] *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665, 678–83 (2015); *Kingdom Fresh Produce, Inc. v. Stokes Law Off., L.L.P. (In re Delta Produce, L.P.)*, 845 F.3d 609, 617 (5th Cir. 2016).  Venue is proper under 28 U.S.C. §§ 1408 and 1409.

## LEGAL STANDARD

A motion under Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the sufficiency of a complaint.  *See Johnson v. MHMR Auth. of Brazos Valley*, 706 F. Supp. 3d 710, 715 (S.D. Tex. 2023).  The Court reviews motions under Rule 12(b)(6) "accepting all well-pleaded

---

[32] S.D.N.Y. Case No. 1:25-cv-06339, ECF No. 76.

[33] ECF No. 7.

[34] ECF No. 20.

[35] *See* S.D.N.Y. Case No. 1:25-cv-06339, ECF No. 75.  In the proceedings in the Southern District of New York, Specialists and IAG sent a joint letter to the presiding judge stating that they "consent to the entry of final orders or judgment by the United States Bankruptcy Court for the Southern District of Texas."  *Id.*

facts as true and viewing those facts in the light most favorable to the plaintiffs." *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007). However, the Court will not strain to find inferences favorable to the plaintiff. *Southland Sec. Corp. v. INSpire Ins. Sols. Inc.*, 365 F.3d 353, 361 (5th Cir. 2004).

Motions to dismiss for failure to state a claim upon which relief can be granted "are viewed with disfavor and are rarely granted." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009) (quoting *Test Masters Educ. Servs., Inc. v. Singh*, 428 F.3d 559, 570 (5th Cir. 2005)). To avoid dismissal under Rule 12(b)(6), the plaintiff must provide sufficient factual matter to state a claim for relief that is plausible on its face when accepting that factual matter as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

The plausibility standard asks for more than "a sheer possibility that the defendant acted unlawfully." *Id.*; *see Lormand*, 565 F.3d at 232 ("[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" (quoting *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007))).

### DISCUSSION

IAG moves to dismiss this adversary proceeding, contending that StopLoss and IAG never entered into any contract that obligated IAG to finance StopLoss's work on the Renaissance Tower project.[36] IAG argues that on December 13, 2024—the date which the purchase addendum related to the Renaissance Tower project was sent to StopLoss—IAG informed StopLoss that all future transactions would be

---

[36] ECF No. 7, at 2.

governed by the terms of a Contractor Reimbursement Agreement ("CRA"), an Application Agreement, and would require execution of personal guarantees by StopLoss's principals.[37] IAG contends that these documents were never executed and that execution of the CRA, Application Agreement, and personal guarantees were conditions precedent to the effectiveness of the purchase addendum.[38] Thus, they argue that StopLoss's complaint fails to state a claim for breach of contract because no contract to purchase accounts receivable related the Renaissance Tower project was ever formed. Additionally, IAG contends that StopLoss's tortious interference claim is "premised entirely" on StopLoss's breach of contract claim and similarly fails to state a claim.[39] The Court disagrees.

## I.    THE BREACH OF CONTRACT CLAIM

The Court's analysis when considering a motion to dismiss is limited. Its role is to assess whether the allegations in the complaint state a plausible claim for relief. *Iqbal*, 556 U.S. at 679. "In Texas, the essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach." *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (citing *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)) (internal quotations omitted). Ordinarily, the Court must not go outside the pleadings when reviewing a Rule 12(b)(6) motion, but the Court may consider "documents that are referred to in the plaintiff's complaint and central to the plaintiffs' claim[s]." *Norman v. Beaumont Indep. Sch. Dist.*, No. 25-40215, 2026 WL 1180537, at *2 (5th Cir. Apr. 30, 2026) (quoting *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003)).

Here, StopLoss's complaint contains sufficient factual allegations, accepted as true, to state a plausible claim for relief for

---

[37] ECF No. 7, at 4–5.
[38] ECF No. 7, at 4–5.
[39] ECF No. 7, at 5.

breach of contract.  StopLoss alleges that it and IAG entered into the Factoring Agreement and this allegation is undisputed.[40]  StopLoss also alleges that IAG contracted to purchase at least $5 million of receivables related to this project[41] and attached the Factoring Agreement and the purchase addendum executed by IAG on December 13, 2024 to the complaint.[42]   The Factoring Agreement specifically provides for purchase addenda,[43] and neither the Factoring Agreement or December 2024 purchase addendum have any mention of a CRA, Application Agreement, or personal guarantees.[44]

Although IAG disputes that the purchase addendum formed a contract, the crux of its argument is that StopLoss failed to execute other required documents and that, absent execution of these documents, the purchase addendum never became effective.[45]  IAG urges the Court to consider documents attached to its motion to dismiss, which it views as constituting the entire agreement.[46]   Determining whether these additional documents constitutes the allegedly breached contract requires a factual analysis of the intent of the parties.  Such a determination is not proper at the motion to dismiss stage.  *See, e.g.*, *Lincoln Gen. Ins. Co. v. U.S. Auto Ins. Servs., Inc.*, 809 F.Supp.2d 582, 592 (N.D. Tex. 2011) ("A motion to dismiss is not the proper stage for a court to consider extrinsic evidence of contracting parties' intent.").

Additionally, a review of the documents attached the IAG's motion to dismiss does not demonstrate, in IAG's words, that it is "indisputable" that that IAG's agreement to provide StopLoss financing

---

[40] *See* ECF No. 7, at 3 ("Defendants do not dispute that prior to Dec. 13, 2024, Plaintiffs and Defendants had been parties to the August 2023 Agreement referenced in the Complaint.").

[41] ECF No. 1 ¶ 43.

[42] ECF No. 6-2.

[43] ECF No. 6-1 §§ 1.1.25; 2.2; 2.3.  *See* also ECF No. 6-1, at 18.

[44] ECF Nos. 6-1; 6-2.

[45] ECF No. 7, at 4 ("[I]t is indisputable that Defendants' agreement to provide Plaintiffs with the financing for the Tower Project was expressly conditioned upon Plaintiffs executing the CRA, the Application Agreement and the Personal Guarantees as part of a single, integrated transaction.").

[46] ECF No. 7, at 3.

was "expressly conditioned" on StopLoss executing other allegedly required documents.[47]   IAG contends that an email from IAG to StopLoss's principals which states that the CRA "is the new approved contract between StopLoss and Insured Advocacy Group II, LLC, which will govern all future and past transactions" creates a condition precedent to the purchase addendum.[48]  This email is not enough for the Court to conclude that no contract was ever formed.   Especially considering that section 9.2 of the Factoring Agreement specifically requires amendments to be in writing and executed by both parties.[49] Nothing in the documents conclusively demonstrates that no contract which obligated IAG to purchase receivables related to the Renaissance Tower project was formed.  Reaching such a conclusion and dismissing StopLoss's breach of contract claim for failure to state a claim is inappropriate at this stage.

IAG's motion to dismiss only raises this one issue regarding contract formation.  It does not attempt to otherwise refute StopLoss's allegations that (i) it performed under the contract or tendered performance; (ii) IAG breached the contract; or (3) that StopLoss sustained damages as a result of the breach.[50]  Nevertheless, StopLoss's complaint contains sufficiently plausible, detailed allegations of each of these elements to survive IAG's motion to dismiss.

## II.   THE TORTIOUS INTERFERENCE CLAIM

StopLoss's complaint also plausibly alleges a claim for tortious interference with contract.  Under Texas law, "[t]he elements of tortious interference with an existing contract are: (1) an existing contract subject to interference, (2) a willful and intentional act of interference with the contract, (3) that proximately caused the plaintiff's injury, and (4) caused actual damages or loss." *Mr. W Fireworks, Inc. v. NRZ Invest. Grp., LLC*, 677 S.W.3d 11, 26 (Tex. App. 2023).  To establish a claim for

---

[47] ECF No. 7, at 4.
[48] ECF No. 7-2.
[49] ECF No. 6-1 § 9.2.
[50] *See* ECF No. 7.

tortious interference with an existing contract, "a plaintiff is not limited to showing the contract was actually breached.  Any interference that makes performance more burdensome or difficult or of less or no value to the one entitled to performance is actionable." *Khan v. GBAK Props., Inc.*, 371 S.W.3d 347, 359−60 (Tex. App. 2012) (internal citations omitted).

IAG argues that StopLoss's tortious interference claim is based entirely on its breach of contract claim.[51]  That is wrong.  StopLoss's tortious interference claim has two distinct theories of tortious interference.[52]  StopLoss alleges that IAG tortiously interfered with the GrayStreet restoration contract by: (i) failing to pay StopLoss any sums related to IAG's agreement to finance the Renaissance Tower project; and (ii) taking actions that prevented StopLoss from securing financing from an alternative source to salvage the Renaissance Tower project.[53]

The Court agrees that StopLoss's first theory appears to be based entirely on its breach of contract claim.  This theory of tortious interference is be barred by the economic loss rule.  Under Texas law, "[t]he economic loss rule generally precludes recovery in tort for economic losses resulting from a party's failure to perform under a contract when the harm consists only of the economic loss of a contractual expectancy."  *Chapman Custom Homes, Inc. v. Dallas Plumbing Co.*, 445 S.W.3d 716, 718 (Tex. 2014).  Under StopLoss's first theory of tortious interference, the duty IAG allegedly breached was its contractual duty to provide StopLoss with financing for the Renaissance Tower project.  This theory alleges no breach of any duty "independent of the contractual undertaking," *id.*, and, as a result, is barred by the economic loss rule.

Nevertheless, StopLoss's tortious interference claim does not fail at this stage.  StopLoss's other theory, that IAG communicated with prospective alternative financiers and prevented them from procuring

---

[51] ECF No. 7, at 2; 5.
[52] ECF No. 1 ¶ 66.
[53] ECF No. 1 ¶ 66.

alternative financing for the project,[54] states a plausible claim for tortious interference.  Thus, the allegations in StopLoss's complaint, accepted as true, provide sufficient facts for the Court to draw the reasonable inference that IAG may have tortiously interfered with the GrayStreet restoration contract.

## CONCLUSION

For the reasons explained above, IAG's motion to dismiss is DENIED.


SIGNED 06/15/2026


_____
Alfredo R Pérez
United States Bankruptcy Judge

---

[54] ECF No. 1 ¶¶ 50–52; 66(b).